*In re* JAMES JOSEPH OTTINGER (The People of the State of Illinois, Plaintiff-Appellee, v. James Joseph Ottinger, Defendant-Appellant).

Fourth District    No. 4—01—0904

Argued June 19, 2002.—Opinion filed August 14, 2002.

W. Keith Davis, of Jennings, Novick, Smalley & Davis, P.C., of Bloomington, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and William L. Browers and Huma A. Khan, Assistant Attorneys General, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

In these proceedings under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 through 99 (West 2000)), defendant James Joseph Ottinger appeals from an order of the circuit court of McLean County dismissing his petition for conditional release and granting the State's motion for a finding of no probable cause upon review of a report of reexamination done July 10, 2001. The issues on appeal are whether (1) the trial court erred in failing to appoint "neutral" or "independent" examiners, (2) the trial court improperly entered summary judgment on the petitions, (3) there was sufficient probable cause to require a full hearing on the discharge and conditional release matters, (4) the Act is unconstitutional because it deprives a defendant of due process by not requiring proof beyond a reasonable doubt and not authorizing the appointment of a sufficient number of experts for a defendant, and (5) defendant was deprived of the effective assistance of counsel. We affirm.

On October 1, 1992, defendant pleaded guilty to criminal sexual assault. Ill. Rev. Stat. 1991, ch. 38, par. 12—13(a)(1). The trial court sentenced him to 21 years' imprisonment. On February 5, 1999, the State filed a petition for commitment of defendant under the Act. On September 14, 1999, defendant admitted the allegations of the petition. On November 23, 1999, the trial court committed defendant to the Illinois Department of Human Services until such time as he was no longer a sexually violent person. On December 21, 1999, defendant filed a motion to reconsider and vacate the judgment of commitment. On October 10, 2000, the trial court denied the motion to reconsider and vacate. On appeal, this court affirmed the order of commitment on May 11, 2001. *In re Ottinger*, No. 4—00—0932 (May 11, 2001) (unpublished order under Supreme Court Rule 23).

On October 10, 2000, defendant filed a *pro se* petition for conditional release pursuant to section 60 of the Act (725 ILCS 207/60 (West 2000)). On October 12, 2000, the public defender was appointed to represent defendant on the petition for conditional release. On October 30, 2000, the public defender, Amy Johnson Davis, filed a motion to withdraw as counsel because of defendant's complaints about her to the Attorney Registration and Disciplinary Commission alleging coercion. On November 21, 2000, the motion to withdraw as counsel was denied. On November 29, 2000, on application by Ms. Davis as

defendant's counsel, the trial court appointed Dr. Larry Davis, a psychologist, to examine defendant and report within 60 days. The mandate from the earlier appeal was filed in the circuit court on June 13, 2001. On July 19, 2001, the trial court scheduled a status hearing for August 14, 2001. On July 20, 2001, the State filed a psychological reexamination report prepared by Dr. Paul J. Heaton and a motion pursuant to section 55 of the Act (725 ILCS 207/55 (West 2000)) for a finding of no probable cause based upon review of the reevaluation report. The report of Dr. Davis was filed by defendant on August 27, 2001. On August 30, 2001, the trial court conducted a hearing on the State's motion for a "no probable cause" finding and defendant's *pro se* petition for conditional release. The trial court found there was no probable cause to believe that (1) defendant was no longer a sexually violent person under section 65(b)(2) of the Act (725 ILCS 207/65(b)(2) (West 2000)) and (2) it was not substantially probable that he would engage in acts of sexual violence if released on conditional release. The trial court dismissed defendant's petition for conditional release and continued defendant's commitment in a secure facility.

Defendant argues that the trial court erred in failing to appoint neutral examiners. Although recognizing that there were no objections by defendant's counsel to the procedures employed in the trial court, defendant contends that the alleged error amounted to plain error (134 Ill. 2d R. 615(a)) or ineffective assistance of counsel. We find no error in the appointment of examiners.

■ A committed person may file a petition for conditional release under section 60 of the Act. Section 60(c) provides as follows:

> "Within 20 days after receipt of the petition, the court shall appoint one or more examiners having the specialized knowledge determined by the court to be appropriate, who shall examine the mental condition of the person and furnish a written report of the examination to the court within 30 days after appointment. The examiners shall have reasonable access to the person for purposes of examination and to the person's past and present treatment records and patient health care records. If any such examiner believes that the person is appropriate for conditional release, the examiner shall report on the type of treatment and services that the person may need while in the community on conditional release. The State has the right to have the person evaluated by experts chosen by the State. The court shall set a probable cause hearing as soon as practical after the examiner's report is filed. If the court determines at the probable cause hearing that cause exists to believe that it is not substantially probable that the person will engage in acts of sexual violence if on release or conditional release, the court shall set a hearing on the issue." 725 ILCS 207/60(c) (West Supp. 2001) (effective August 17, 2001).

■ On October 10, 2000, defendant filed a *pro se* petition for conditional release. On November 29, 2000, the court appointed Dr. Davis. In the interim, on October 12, 2000, the trial court appointed counsel for defendant pursuant to section 60(b) of the Act (725 ILCS 207/60(b) (West 2000)), appointed counsel moved to withdraw as counsel on October 30, 2000, and on November 21, 2000, the trial court heard and denied the motion to withdraw. Defendant does not raise the failure to appoint Dr. Davis within 20 days as prejudicial error. Instead, defendant argues that Dr. Heaton was a State expert, Dr. Davis was defendant's expert, and no "neutral" or "independent" expert was appointed by the court. He claims this violates the statute.

Dr. Davis was appointed on defendant's motion. Defendant makes no statutory construction argument. Nor does he make an argument that demonstrates that section 60(c) evidences a legislative intent to require that the trial court appoint an examiner who was not requested by either party. The court appointed an examiner as required by the statute. There was no error, plain or otherwise.

Defendant's argument suggests that section 25(e) of the Act (725 ILCS 207/25(e) (West 2000)) affords him the opportunity to have another expert appointed. We disagree. Although section 25(c) (725 ILCS 207/25(c) (West 2000)) sets forth the procedural rights of any person who is subject to a petition at "any hearing" under the Act, section 25 generally pertains to proceedings on the petition under section 15 of the Act (725 ILCS 207/15 (West 2000)). 725 ILCS 207/25(a) (West 2000). Therefore, we do not read the provision in section 25(e) as applying to the proceedings under sections 55, 60, and 65 of the Act in this case.

Nor has defendant demonstrated ineffective assistance of counsel on this basis. To establish ineffective assistance of counsel, defendant must demonstrate that his counsel's performance was fundamentally deficient and, but for counsel's deficient performance, the result of the proceeding would have been different. *People v. Coleman*, 183 Ill. 2d 366, 397-98, 701 N.E.2d 1063, 1079 (1998). The failure of defendant's counsel to make a futile objection does not constitute fundamentally deficient performance. See *People v. Wilson*, 164 Ill. 2d 436, 454, 647 N.E.2d 910, 919 (1994) (failure to file a futile motion does not establish ineffective assistance of counsel).

●3 Defendant next argues that the procedure employed in this case amounted to an improper summary judgment for the State on the petition for conditional release and the State's motion for a "no probable cause" finding. Defendant relies on *People v. Trainor*, 196 Ill. 2d 318, 752 N.E.2d 1055 (2001). *Trainor* is distinguishable from this case. In *Trainor*, the supreme court found that summary judgment was not

authorized in a recovery proceeding under the Sexually Dangerous Persons Act (725 ILCS 205/0.01 through 12 (West 2000)). *Trainor*, 196 Ill. 2d at 338-42, 752 N.E.2d at 1067-69. Defendant recognizes the distinction between the Sexually Dangerous Persons Act, which authorizes a proceeding against a person who has been charged with but not yet convicted of a criminal offense (725 ILCS 205/3 (West 2000)), and the Act, which requires that the person sought to be committed has been found guilty of a sexually violent offense, either as an adult or delinquent minor, or has been found not guilty of a sexually violent offense by reason of insanity, mental disease, or mental defect (725 ILCS 207/15(b)(1)(A) through (b)(1)(C) (West 2000)).

*Trainor* is also distinguishable from this case because no motion for summary judgment was made here (see 735 ILCS 5/2—1005 (West 2000)), summary judgment was not granted, and the procedure employed by the trial court was precisely the probable cause hearing contemplated by section 60(c) of the Act. Similarly, section 55 of the Act recognizes periodic examination of the committed person following initial commitment. Section 55 does not require a formal hearing, but only the submission of a report from the examiner conducting the examination (725 ILCS 207/55(b) (West 2000)), although the court may appoint another expert to examine the committed person at his request (725 ILCS 207/55(a) (West 2000)). Section 55(d) anticipates that a petition for discharge may be filed after reexamination, but requires that it comply with section 65 of the Act. 725 ILCS 207/55(d) (West 2000). Defendant argues that the trial court did not comply with section 65(b) of the Act (725 ILCS 207/65(b) (West 2000)). Section 65(b)(1) of the Act provides:

"A person may petition the committing court for discharge from custody or supervision without the Secretary's approval. At the time of an examination under subsection (a) of Section 55 of this Act, the Secretary shall provide the committed person with a written notice of the person's right to petition the court for discharge over the Secretary's objection. The notice shall contain a waiver of rights. The Secretary shall forward the notice and waiver form to the court with the report of the Department's examination under Section 55 of this Act. If the person does not affirmatively waive the right to petition, the court shall set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person. If a person does not file a petition for discharge, yet fails to waive the right to petition under this Section, then the probable cause hearing consists only of a review of the reexamination reports and arguments on behalf of the parties. The committed person has a right to have an attorney represent him or her at the probable cause hearing, but the

person is not entitled to be present at the probable cause hearing. The probable cause hearing under this Section must be held within 45 days of the filing of the reexamination report under Section 55 of this Act." 725 ILCS 207/65(b)(1) (West 2000).

In this case, defendant was given a notice of a right to petition for discharge and was provided a waiver of the right to petition for discharge, which he did not sign. A hearing is to be scheduled on the issue of discharge only if the trial court determines at a probable cause hearing under section 65(b)(1) that probable cause exists to believe that the committed person is no longer a sexually violent person. 725 ILCS 207/65(b)(2) (West 2000). Because the probable cause hearing under section 65(b)(1) consists only of a review of the reexamination reports and the arguments of the parties, the procedure employed by the trial court in this case comported with section 65(b)(1) and was not equivalent to granting summary judgment.

■ Defendant next argues that sufficient cause was shown to require a full hearing on both the discharge and conditional release issues. Whether probable cause exists to conduct a hearing on a petition for conditional release or discharge is a matter resting in the sound discretion of the trial court. On review, this court will not substitute its judgment for that of the trial court, but will ascertain whether the trial court's determination resulted from an abuse of discretion. See *Woolverton v. McCracken*, 321 Ill. App. 3d 440, 445, 748 N.E.2d 327, 331-32 (2001). The trial court will be deemed to have abused its discretion if it acted arbitrarily, without the employment of conscientious judgment, or exceeded the bounds of reason and ignored recognized principles of law resulting in substantial prejudice. *Woolverton*, 321 Ill. App. 3d at 445, 748 N.E.2d at 332.

■ Before proceeding to this issue on the merits, we must resolve the question raised by defendant of whether the standards for determining the entitlement to a full hearing on the respective petitions are different in each of these proceedings. Defendant suggests that the "cause" referred to in section 60(c) of the Act relating to conditional release means something different than "probable cause" referred to in section 65(b)(1) of the Act and requires a lesser standard.

In construing a statute, courts ascertain and give effect to the intent of the legislature; the language of the statute is the best evidence of legislative intent; and statutes are construed to avoid absurd and unjust results. *In re A.P.*, 179 Ill. 2d 184, 195, 688 N.E.2d 642, 648 (1997). In this case, defendant can maintain his argument only by taking the word "cause" out of context in the last sentence of section 60(c), which states in its entirety: "If the court determines at the *probable cause hearing* that *cause* exists to believe that it is not

substantially *probable* that the person will engage in acts of sexual violence if on release or conditional release, the court shall set a hearing on the issue." (Emphasis added.) 725 ILCS 207/60(c) (West 2000). It is readily apparent that the legislature intended a "probable cause" determination be made to establish entitlement to a hearing on conditional release. Therefore, the standard to be applied by the trial court in a probable cause hearing under section 60(c) is not a lesser standard than it would be required to apply under section 65(b)(1) and, by reason of the use of the term "substantially" in section 60(c), it may place a greater burden on defendant to demonstrate entitlement to a hearing on conditional release, but that is not an issue raised in this appeal and we do not decide it. Section 65(b)(2) states in the positive the requirement of proof that probable cause exists to believe the committed person is no longer a sexually violent person. Section 60(c) allows the trial court to grant a full hearing for conditional release on the finding of the obverse, that it is not substantially probable that defendant will engage in acts of sexual violence if released.

Dr. Heaton found that defendant continued to be a substantial risk for sexual reoffense; he required further intensive, secure care sex-offender treatment; and his treatment progress was painfully slow. In reaching those conclusions, Dr. Heaton relied on the facts that defendant did not consistently attend treatment classes, continued to deny guilt for a 1991 aggravated criminal sexual assault of a mentally and physically handicapped adult male to which he pleaded guilty, reported that treatment classes did not help him and he would rely on "common sense" to prevent recurrence, three times failed to pass group classes, was undergoing ongoing treatment for alcohol abuse, and had no noticeable behavior changes.

Although Dr. Davis recommended that defendant be granted conditional release, he observed that defendant demonstrated a pattern of chronic psychological maladjustment; was likely to be chronically disoriented, alienated, and withdrawn from others; was cynical and might see others as threatening and harmful; had a profile suggesting a borderline psychotic condition, excessive focus on his physical body and health, and a schizotypal personality disorder, meaning an unusual process of thinking and interacting not truly psychotic; and had a tendency for substance abuse or addictive proneness. Dr. Davis's report further indicated that defendant continued to adamantly insist he did not sexually abuse the alleged victim and he pleaded guilty to avoid a greater sentence because of earlier charges of molesting two young children. We note that Dr. Davis was the original defendant's expert in this case and has maintained all along that defendant was not a sexually violent person.

In addition, without objection by defendant, the trial court took notice of its file, including the original evaluation by Dr. Jacqueline Buck. Buck's report related that defendant had an extensive criminal history; he indicated that he had only been caught once; and he did not display remorse, guilt, shame, or empathy with the victims. Buck concluded that defendant suffered from long-standing angry, hurtful, and impulsive behavior directed toward persons he could control or dominate, including through sexual violence. According to Buck, defendant had a strongly ingrained pattern of antisocial behavior. While on parole in 1997, defendant physically and verbally intimidated the handicapped man he had sodomized years before. According to Buck, defendant had no understanding about his pattern of sexual offense, what triggered it, and what changes must be made to ensure that he did not continue the sexually violent acts.

■ ■ "Probable cause" is defined as:

"Reasonable cause; having more evidence for than against. A reasonable ground for belief in the existence of facts warranting the proceedings complained of. An apparent state of facts found to exist upon reasonable inquiry (that is, such inquiry as the given case renders convenient and proper), which would induce a reasonably intelligent and prudent man to believe, in a criminal case, that the accused person had committed the crime charged, or, in a civil case, that a cause of action existed." Black's Law Dictionary 1081 (5th ed. 1979).

As to the petition for conditional release, defendant failed to prove facts that would lead the trial court to reasonably believe that it was not substantially probable that he will engage in acts of sexual violence if conditionally released. No facts demonstrated that he can control his own behavior outside of a controlled environment. Nor had he undertaken the steps necessary to get to that point. For the same reasons, there was no probable cause to believe that defendant was no longer a sexually dangerous person. The trial court may give greater weight to the opinions of Drs. Buck and Heaton than to those of Dr. Davis because Dr. Davis relied substantially on what defendant told him and did not mention or refute any treatment progress notes. The trial court did not commit an abuse of discretion by determining that defendant was not entitled to a full hearing on conditional release or discharge.

■ Defendant next argues that the Act is unconstitutional because the statutory procedures employed in this case violated his right to due process by continuing his detention without proof beyond a reasonable doubt. Defendant challenges the clear and convincing evidence burden of proof incorporated in sections 60(d) and 65(b)(2) for full

hearings on petitions for conditional release and discharge, respectively. However, because defendant has failed to establish entitlement to a hearing under either section, we decline to address this issue because it requests an advisory opinion. A party does not have standing to challenge the constitutionality of a statute unless he has sustained or is in danger of sustaining a direct injury as a result of its enforcement; otherwise the challenge requests an advisory opinion. *Flynn v. Ryan*, 199 Ill. 2d 430, 437-38 (2002); see *People v. Hill*, 199 Ill. 2d 440, 445 (2002) ("A defendant does not ordinarily have standing to challenge a statute as it might be applied to others in different circumstances"). Moreover, the Supreme Court of Illinois has already determined that a burden of proof of clear and convincing evidence in a proceeding under the Act does not violate due process. *In re Detention of Samuelson*, 189 Ill. 2d 548, 564, 727 N.E.2d 228, 237 (2000).

Defendant also argues that he was denied due process because the State, in essence, had two experts, Drs. Heaton and Buck, and he only had one, Dr. Davis. Defendant was given the opportunity to have an examiner appointed, and he chose Dr. Davis to examine him, probably because Dr. Davis gave the original opinion that defendant was not a sexually violent person. Had defendant chosen to have another examiner, the Act would not prevent his doing so. The cases relied on by defendant, *In re Detention of Trevino*, 317 Ill. App. 3d 324, 331, 740 N.E.2d 810, 815 (2000), and *In re Detention of Kortte*, 317 Ill. App. 3d 111, 118, 738 N.E.2d 983, 988 (2000), are distinguishable because they dealt with a provision of the Act that denied the respondents therein an opportunity to defend themselves by barring presentation of an expert witness to contradict the State's expert on the basis of the respondents' failure to cooperate with a court-ordered evaluation (see 725 ILCS 207/30(c) (West 2000)). Here, defendant was not prevented from presenting his expert witness. He could have chosen a different examiner, thus enabling him to refer to Davis's original report and the report of the new examiner. The Act, as applied in this case, does not violate defendant's right to due process. As a result, defendant's claim of ineffective assistance of counsel for failing to make a "meaningful" constitutional challenge to the Act lacks merit.

■ Finally, we address defendant's contention that he was provided ineffective assistance of counsel because of the delay in causing his petition for conditional release to be heard. Defendant notes that Dr. Davis's report was dated April 2, 2001, and it was filed in the circuit court on August 27, 2001.

When an examiner is appointed, the examiner is to provide a written report of examination to the court within 30 days after the appointment. 725 ILCS 207/60(c) (West 2000). Without objection from

defendant and indeed on defendant's motion, the court granted Davis 60 days to file the report. We agree that defendant's counsel should have followed this case to ensure that Davis's report was provided to the court in a timely fashion. However, the failure to do so did not prejudice defendant in the outcome of the proceeding. The prejudice required to demonstrate ineffective assistance of counsel is that, but for counsel's deficient performance, the result of the proceeding would have been different. *Coleman*, 183 Ill. 2d at 397, 701 N.E.2d at 1079. Defendant argues that he is prejudiced because, as a result of the delay, he could not file another petition for conditional release until six months after the dismissal of this petition. See 725 ILCS 207/60(a) (West 2000). That, however, is a collateral matter and not the type of prejudice that establishes ineffective assistance of counsel because it does not demonstrate that the proceeding subject to this appeal would have resulted differently had there been no delay. The State would still have had the opportunity to obtain the report of an expert. See 725 ILCS 207/60(c) (West 2000).

The judgment of the circuit court of McLean County is affirmed.

Affirmed.

KNECHT and APPLETON, JJ., concur.